**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **WORLD MISSIONS MINISTRIES, INC.,** | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * Civil Case No. **RWT 06-13** |
| | * |
| **GENERAL STEEL CORPORATION et al.,** | * |
| | * |
| Defendants. | * |

**MEMORANDUM OPINION**

This is an action under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, to confirm an arbitration award. Plaintiff World Missions Ministries, Inc., is a District of Columbia not-for-profit religious corporation with operations in Maryland and Virginia; Defendants (collectively "General Steel") are Colorado corporations in the business of selling, *inter alia*, prefabricated steel building materials. Before the Court now are General Steel's Motion for Change of Venue or, in the Alternative, to Dismiss for *Forum Non Conveniens* [Paper No. 6] and World Missions' Motion to Confirm the Arbitration Awards and to Transfer the Defendants' Putative Colorado Federal Action to this Court [Paper No. 9]. Also before the Court is World Missions' Complaint to Confirm Arbitration Award, which pursuant to 9 U.S.C. § 6 is properly construed as a motion. Because, for the reasons explained below, venue is proper in this district, the Court will, by separate order, deny General Steel's motion to transfer or dismiss the case, and will grant World Missions' motions to confirm the arbitration award. The Court declines to order that the Colorado action be transferred here, instead leaving it to the sound discretion of the U.S. District Court for the District of Colorado to dispose of its case as it deems appropriate.

**BACKGROUND**

In early 2004, World Missions agreed to purchase building materials from General Steel with which World Missions intended to erect a church building in Prince George's County, Maryland. Negotiations leading to the purchase contract were apparently conducted by means of telephone conversations between the plaintiff in Maryland and the defendants in Colorado. Ultimately, General Steel sent the plaintiff a contract (by mail or facsimile), the plaintiff executed it here in Maryland, and the plaintiff then sent it back to General Steel with a check for partial payment from Maryland. There is no allegation that any General Steel employee ever set foot in Maryland, but General Steel knew it was contracting with a Maryland institution, and it agreed to deliver the building materials to the plaintiff in Maryland. *See* Contract, Complaint (Paper No. 1) exh. A (charging for freight and noting delivery terms).

When the purchase transaction went sour, the parties proceeded to arbitration, pursuant to an arbitration clause in the purchase contract, before an arbitrator located in Colorado. At issue in the arbitration were the terms of General Steel's contract. The facts, as found by the arbitrator, are as follows:

> On or about February 19, 2004, the [World Missions Ministries] entered into a contract to purchase a steel building from [General Steel] for the price of $131,480. The contract specified and the parties agreed that the price would stay the same so long as delivery took place within a year, namely by February 18, 2005. Otherwise under paragraph 2 of the Conditions section certain unspecified storage charges and delay costs could be added to the purchase price.
> . . . [General Steel] claimed that . . . there was a 74% increase in steel prices that was passed along by its suppliers to [General Steel] between February 19, 2004, and February 18, 2005. . . .
> In advance of February 18, 2005, [World Missions] sought delivery of the product. On or about February 8, 2005, [General Steel] claimed that it would not be possible to deliver the blueprints and product by February 18, 2005, and thus refused to do so unless [World Missions] paid an additional

2

> . . . delay fee of $60,000. [General Steel] attempted to justify this as being less than the 74% cost increase being passed on to new buyers.

Interim Award of Arbitrator, Complaint (Paper No. 1) exh. B., at 2.

The arbitrator issued its Interim Award on October 17, 2005, in which it found the defendants liable to World Missions for breach of contract and violations of the Colorado Consumer Protection Act. It awarded World Missions $114,300.00 in damages. *Id.* at 3. It issued a Final Award, which added additional damages for attorney's fees and costs, on November 15, 2005. Final Award of Arbitrator, Complaint (Paper No. 1) exh. C.

Seeking a judgment for the damages it was awarded, World Missions brought this action to confirm the arbitration award on January 4, 2006. On February 10, 2006, General Steel filed the instant motion for change of venue or, in the alternative, to dismiss for *forum non conveniens*. Paper No. 6. General Steel also filed, on February 13, 2006, an action and motion to vacate the arbitration award in the U.S. District Court for the District of Colorado. *See General Steel Corp. v. World Missions Ministries, Inc.*, No. 06-0245-PSF-MEH (D. Colo.). World Missions moved in response to confirm the arbitration award and to transfer General Steel's Colorado action to this Court. Paper No. 9.

## DISCUSSION

*Venue*

As a preliminary matter, the Court notes two points that are not in dispute. First, venue is proper in the U.S. District Court for the District of Colorado; the question is whether it is also proper here. Second, if venue is proper in this district, it is proper under the general federal venue statute, 28 U.S.C. § 1391, not under the venue provisions of the Federal Arbitration Act, 9 U.S.C. §§ 9–11, which provide for permissive venue in the district where the arbitration occurred, but which are not

exclusive under *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000).

What is under dispute, then, is whether, on the facts of this case, venue is proper in the District of Maryland under 28 U.S.C. § 1391(a), the subsection of the general federal venue statute that pertains to actions such as this one that are founded in diversity.[1] 28 U.S.C. § 1391(a) provides, in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
> (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or]
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . . .

The parties argue under § 1391(a)(2) about whether "a substantial part of the events or omissions giving rise to the claim occurred" in Maryland. However, if there is venue under § 1391(a)(1), these arguments are unnecessary.

The reason that § 1391(a)(1) is dispositive is that subsection § 1391(c), a subsection not mentioned by the parties, provides, in relevant part:

> For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

Both General Steel defendants are corporations.[2] Thus, the venue inquiry as to the General Steel

---

[1] Plaintiffs allege diversity jurisdiction, even though jurisdiction could also be based upon the Federal Arbitration Act. However, the venue provisions in § 1391(a) and § 1391(b), the venue provision for actions "not founded solely on diversity of citizenship," are identical except for their last clauses, § 1391(a)(3) and § 1391(b)(3), which are not at issue in this case.

[2] General Steel Domestic Sales, LLC, is a limited liability company, but "for determining venue it is treated as a corporation." *See, e.g.*, *Pippett v. Waterford Dev., LLC*, 166 F. Supp. 2d 233, 238 (E.D. Pa. 2001).

4

defendants collapses into the question of whether there is personal jurisdiction over them—which General Steel has not challenged and has therefore waived under Fed. R. Civ. P. 12(h)(1).

Even on the merits, however, this court has personal jurisdiction, which depends on whether "(1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1199 (4th Cir. 1993). As to the first prong of the inquiry, the Maryland long-arm statute authorizes personal jurisdiction over, *inter alia*, "a person, who directly or by an agent . . . [c]ontracts to supply goods, food, services, or manufactured products in the State." Md. Code Ann., Cts. & Jud. Proc. § 6-103(b)(2). This is precisely what General Steel did when it entered into the disputed contract with World Missions Ministries and agreed to provide steel products to World Missions in Maryland.[3]

As to the second prong, the exercise of personal jurisdiction over General Steel also comports with due process. Under the Due Process Clause, an adequate connection may be found between a defendant and the forum state in one of two ways: specific jurisdiction based on a defendant's conduct connected to the suit, or general jurisdiction based on a defendant's general contacts with the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–16 & nn.8–9 (1984). Here, although the defendants have few or no general contacts with Maryland, their conduct pertaining to this specific contract is sufficiently connected to Maryland that they may be sued here in relation to it. They knowingly sent a purchase contract to a Maryland entity in Maryland, that entity (per the contract) dispatched payment from Maryland, and they agreed through that contract to deliver goods to Maryland. Although the record reflects only the one

---

[3]In any case, the Maryland long-arm statute authorizes the exercise of personal jurisdiction to the outer limits of the Due Process Clause, so the "two inquiries essentially become one." *Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135–36 (4th Cir. 1996).

contract in Maryland, the value of that contract, as initially contemplated, was $131,480. Contract, Complaint (Paper No. 1) exh. A. This, by itself, was intended to be a "substantial and direct economic benefit[]" from a contract with a Maryland customer, and it involved not just the "'expectation' that its products would enter Maryland," but an affirmative agreement to deliver them there. *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130, 146–47 (D. Md. 1981) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297–98 (1980)).

Accordingly, this Court may constitutionally exercise personal jurisdiction, and under 28 U.S.C. § 1391(c), venue is proper. Defendants' motion for change of venue will therefore be denied by separate order.[4]

*Confirmation of the Arbitration Award*

Venue being proper, it is appropriate to turn to World Missions' motion to confirm the arbitration award.

Under the FAA, 9 U.S.C. § 9, a district court "must grant . . . an order [confirming an arbitration award] unless the award is vacated, corrected, or modified as specified in [9 U.S.C. §§ 10 or 11]." Sections 10 and 11, in turn, provide criteria under which an arbitration award may be vacated[5] or modified.[6] Under 9 U.S.C. § 6, applications to the Court under the FAA "shall be made

---

[4] Defendants' alternative arguments to dismiss for *forum non conveniens* are without merit. As to the "private" factors enumerated in *Piper Aircraft v. Reyno*, 454 U.S. 235, 241 n.6 (1981), the confirmation of an arbitration award is unlikely to require any witness testimony at all, and the factor of cost cuts in favor of the plaintiff, a nonprofit religious organization located in Maryland. As to the "public" factors, the confirmation of the award is a matter of federal law, notwithstanding the fact that jurisdiction of this case was alleged to be based on diversity. Plaintiff has already been forced, at considerable inconvenience, to arbitrate in Colorado; to confirm the award, it should be allowed to select its forum, as is its traditional right.

[5] "(1) [W]here the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them;

and heard in the manner provided by law for the making and hearing of motions."

General Steel has not moved for a vacation or modification of the arbitration award in this Court. The FAA imposes strict time limits on motions to vacate—notice must be served on the opposing party or counsel "within three months after the [arbitration] award is filed or delivered." 9 U.S.C. § 12. That time has elapsed, and no party has put before this Court any reason why the arbitration award should not be confirmed, nor is any reason apparent from the face of the arbitrator's written decisions.

General Steel, however, argues that it has filed a motion to vacate in its Colorado action, and that the merits of that motion must be decided there. *See* Motion to Vacate Arbitration Award (Paper No. 1), *General Steel Corp. v. World Missions Ministries, Inc.*, No. 06-0245-PSF-MEH (D. Colo.). For its part, World Missions argues that the Colorado motion to vacate was untimely, but that this Court should "effectuate the transfer" of the Colorado litigation to this Court. Neither the timeliness nor the merits of the Colorado action are properly before this Court, and World Missions has cited no authority for the proposition that this Court has the power to bring these issues here.

Thus, this Court concludes that the appropriate course of action is to neither decide the issues

---

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." § 10(a).

[6] "(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award[;]
(b) [w]here the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted[;] or
(c) [w]here the award is imperfect in matter of form not affecting the merits of the controversy." § 11.

7

in the Colorado action nor to attempt to effectuate a transfer.  Rather, because General Steel has not substantively opposed the confirmation of the arbitration award, this Court will confirm it.

The Court does not know whether General Steel's decision to challenge only venue stems from confidence that this Court would transfer this action to Colorado or a mistaken belief that it needed to enter a "special appearance" to challenge venue and could not do so while also moving to vacate the award,[7] *see*, *e.g.*, D.'s Opp. to P.'s Mot. to Confirm Arbitration Award, Paper No. 12, at 1 ("Defendants . . . appearing specially for the purpose of challenging venue").  But either way, General Steel has been faced with two separate motions to confirm the arbitration award (the initial complaint—a motion under 9 U.S.C. § 6—and  the plaintiff's later motion to confirm, Paper No. 9) and has provided no substantive reason why this Court should not grant either.  General Steel has had ample opportunity to do so; its counsel noticed his appearance (and successfully sought an extension of time to respond) before its deadline to file an FAA motion to vacate the arbitrator's final award, before its deadline to oppose the original motion, and, indeed, before it filed its action in Colorado.

Accordingly, the arbitration award will be confirmed.  By separate order, Plaintiff's "Complaint to Confirm Arbitration Award," Paper No. 1, will be granted as a motion pursuant to 9 U.S.C. § 6; its separate motion to confirm the arbitration awards and transfer the defendants' Colorado action to this Court (Paper No. 9) will be granted in part to the extent it seeks confirmation

---

[7]Under the Federal Rules of Civil Procedure, even "filing a counterclaim, compulsory or permissive, cannot waive a party's objections" to personal jurisdiction or venue. *Rates Tech., Inc. v. Nortel Networks Corp.*, 399 F.3d 1302, 1308 (Fed. Cir. 2005).  If General Steel had chosen to substantively oppose confirmation of the arbitration award, it could have done so—either raising arguments in opposition or by a motion to vacate—without compromising its venue defense.

of the award, and denied in part to the extent it seeks a transfer. This opinion will be communicated to the U.S. District Court for the District of Colorado, for that court to proceed with its action as it deems appropriate.

<pre>
   7/28/06                                      /s/
    DATE                              ROGER W. TITUS
                               UNITED STATES DISTRICT JUDGE
</pre>